**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION**

ROBERT G. MONGLER,
    A Resident of Missouri;

    Plaintiff,
v.                                                                Case No.
BRIAN KNIGHT, a Resident of Illinois;
MICHAEL LOPRIENO, a Resident of Illinois,
CAPGAIN PROPERTIES, INC., FORMERLY
    NAMED BIG MOJO CAPITAL, INC., A Canadian
    Corporation, Principal Place of Business Illinois;
CAPGAIN HOLDINGS, INC., FORMERLY NAMED
    CAPGAIN PROPERTIES, INC., A Canadian Corporation,
    Principal Place of Business Illinois;
STRATEGIC LENDING SOLUTIONS, LLC
    An Illinois Limited Liability Company, Principal Place of
    Business Illinois;
LOP CAPITAL, LLC,
    A New Mexico Limited Liability Company,
    Principal Place of Business Illinois;
CONSULTING DIRECT, INC.,
    A Delaware Corporation,
    Principal Place of Business Oregon; and
TY KIRKPATRICK, a Resident of Oregon.
    Defendants.
_____/

## COMPLAINT AND JURY DEMAND

Plaintiff Robert G. Mongler ("Mongler") a Resident of Missouri, now sues Brian Knight, a resident of Illinois ("Knight") Michael Loprieno ("Loprieno"), a resident of Illinois, Capgain Properties, Inc., f/k/a Big Mojo Capital, Inc., a Canadian Corporation ("Capgain Properties f/k/a Big Mojo") with principal place of business in Illinois, Capgain Holdings, Inc., a Canadian Corporation, formerly named Capgain Properties, Inc., ("Capgain Holdings f/k/a Capgain Properties"), principal place of business British Columbia, Canada, Strategic Lending Solutions, LLC ("SLS"), an Illinois Limited Liability Company, LOP Capital, LLC, A New Mexico

1

Limited Liability Company, ("LOP"), Consulting Direct, Inc., a California Corporation, ("Consulting Direct") and Ty Kirkpatrick ("Kirkpatrick") an Oregon resident and states as follows:

## I.   SUMMARY OF ALLEGATIONS

This case alleges fraud, constructive fraud, breach of fiduciary duty, and civil conspiracy relating to the fraudulent filing of deeds without payment of consideration divesting Mongler of his membership interest of RGM Properties, LLC, a Missouri LLC ("RGM"), by divesting RGM of real property through fraudulent offerings of securities of both Capgain Properties f/k/a Big Mojo, and Capgain Holdings f/k/a Capgain Properties, fraud, and other claims, that were orchestrated and carried out by Knight and Loprieno, the Defendant SLS, an entity owned and controlled by Knight, and LOP, an entity owed and controlled by Loprieno, together with Defendant Kirkpatrick and his company, Consulting Direct.  The complaint alleges diversity jurisdiction, and seeks a jury trial and monetary damages in excess of $75,000.01.

## II.   THE PLAINTIFF

1. Plaintiff  Robert G. Mongler is a Missouri Resident, and formed and owned RGM Properties, LLC ("RGM"), which is a Missouri limited liability company, which in turn was the owner of real property in Ware County, Georgia, deed attached as Exhibit A (the "RGM Deed, and the real property identified therein, the "RGM Property").  In 2011, RGM owned the RGM Property free and clear of all liens and encumbrances, and the RGM Property had a fair market value in excess of three million dollars.  Through 2011, Mongler was the sole Member of RGM.

## III.   THE DEFENDANTS

2. Knight is an adult citizen of the United States, residing in the State of Illinois.

3. Loprieno is an adult citizen of the United States, residing in the State of Illinois, and is an attorney licensed to practice law in the State of Illinois.

4. Capgain Holdings f/k/a Capgain Properties is a Canadian corporation incorporated under the laws of Alberta, Canada, by Knight and Loprieno, on September 19, 2011, and at all material times hereto had its head office and principal place of business at 9 Crystal Lake Road, Suite 250, Lake in the Hills, Illinois, 60156.  Capgain Holdings, Inc., was originally incorporated with the name "Capgain Properties, Inc." and in January 2013 the name was changed to Capgain Holdings, Inc.

5. Capgain Properties f/k/a Big Mojo, was named Big Mojo Capital, Inc., through January 2013, when Defendants Knight and Loprieno caused its name to be changed to Capgain Properties, Inc.   and it is a Canadian corporation incorporated under the laws of British Columbia on April 30, 2009, and was classified as a Capital Pool Company (CTC) under the rules of the TSX Venture Exchange, and generally, was required to complete a qualifying transaction by acquiring significant assets other than cash by way of amalgamation, merger, or arrangement with another company.

6. Defendant Strategic Lending Solutions, LLC is an Illinois Limited Liability Company, owned by Defendant Knight.

7. Defendant LOP Capital, LLC, is a New Mexico Limited Liability Company, owned by Defendant Loprieno.

8. Defendant Consulting Direct, Inc., is a Delaware Corporation, with its principal place of business in Oregon, owed by Defendant Kirkpatrick.

9. Defendant Ty Kirkpatrick is an Oregon resident, and is the owner of Defendant Consulting Direct, Inc.

## IV.     JURISDICTION

10.     This Court has jurisdiction over this action pursuant to Diversity Jurisdiction, 28 U.S.C. § 1332.

11.     Plaintiffs seek damages in excess of $75,000.01.

12.     Plaintiff Robert Mongler is a Missouri Resident of Randolph County, Missouri, which lies within the Northern Division of the Eastern District.

13.     As stated above, no defendant is a resident of Missouri, and there is complete diversity of citizenship.

14.     Venue in this case is appropriate in the Eastern District of Missouri, Northern Division, pursuant to 28 U.S.C. § 1391 and Local Rule 3-2.07, as a substantial part of the events or omissions giving rise to the claim occurred within this District.  All communications set forth in this Complaint to Plaintiff were made by Defendants to Missouri through the use of interstate wires to communicate with Mongler while Mongler was present in Missouri.

## V.     FACTS

15.     In September 2011, Knight and Loprieno incorporated Capgain Holdings f/k/a Capgain Properties in Alberta, Canada, and established its principal place of business in Illinois.

16.     In October 2011 through March 2012, Knight and Loprieno agreed to implement a scheme to procure deeds to United States real estate without paying the promised consideration for the real estate by inducing sellers to provide deeds to Knight and Loprieno induced by false promises of Knight and Loprieno to issue tradeable securities in Capgain Holdings f/k/a Capgain Properties that would be launched as a publicly tradeable corporation on a Canadian stock exchange.

17. The amount falsely promised to sellers of United States real estate, including Kirkpatrick, RGM, and Consulting Direct, was computed by multiplying a number of shares by the promised, but false, fixed share price that began at $0.10 and increased to $0.20. Knight and Loprieno had no ability to guarantee the ultimate offering value of shares ultimately made available to the public through a public offering, the representations by Knight and Loprieno as to value were false and known to be false at the time the representations were made to induce Kirkpatrick to deliver deeds of RGM's Property, Kirkpatrick did deliver deeds to RGM's Property for no consideration, and as a result, Kirkpatrick was unable to pay Mongler the consideration for Kirkpatrick and/or Consulting Direct purported acquisition of Mongler's membership interest in RGM.

18. Prior to October 2011, Kirkpatrick and RGM's owner, Robert Mongler, began negotiations for the purchase of Mongler's LLC membership interest in RGM by Kirkpatrick and/or Kirkpatrick's corporation, Consulting Direct.

19. In October through December, 2011, Loprieno represented to Robert Mongler, owner of RGM, that Loprieno was Kirkpatrick's attorney.

20. In November of 2011, Knight and Loprieno drafted and presented to Mongler a "Purchase and Sale Agreement of Limited Liability Company Interest," Exhibit B, which Mongler signed but, to the knowledge of Mongler, Consulting Direct and Kirkpatrick never executed.

21. On December 8, 2011, Loprieno drafted and induced Kirkpatrick to sign deeds purportedly deeding an interest in RGM's Property, wherein Loprieno and Kirkpatrick both falsely represented that Consulting Direct was the "sole Member of RGM Properties, LLC," and at the time Kirkpatrick signed these deeds, both Loprieno and Kirkpatrick knew that Consulting

5

Direct was not the member of RGM, that Kirkpatrick and Consulting Direct had not paid Mongler the amount due for Mongler's membership interest in RGM, and the deeds were signed by Kirkpatrick at Loprieno's urging so Loprieno could record the deeds and claim that Capgain Holdings, Inc., formerly named Capgain Properties, Inc., owned RGM's Property free and clear of all claims and liens:

    a. A deed from RGM, as grantor, to LOP Capital, LLC, as grantee, Exhibit C, the "LOP Deed" for one-third of RGM's Property.  LOP paid no consideration for the LOP Deed;

    b. A deed from RGM to SLS, as grantee, Exhibit D, the "SLS Deed" for one-third of RGM's Property.  SLS paid no consideration for the SLS Deed; and

    c. A deed from RGM to Capgain Properties, Inc., as grantee, Exhibit E, the "Capgain Deed" stating that RGM was deeding the RGM Property to Capgain Properties, Inc., for "$12,500 and 8,300,000 shares of Capgain Properties, Inc. Capgain Holdings, Inc., then named Capgain Properties, Inc., paid no consideration to RGM for this deed.

22. On December 8, 2011, Knight, Loprieno, Kirkpatrick, and the remaining Defendants knew that Kirkpatrick had no authority to execute the deeds identified in Paragraph 21 and knew that no consideration had been paid to either Mongler or RGM for the membership interest of RGM or the RGM Property.

23. On December 28, 2011, Loprieno drafted and presented for execution to Mongler a document titled, "Amendment to Articles of Organization," Exhibit F, and represented through communications made to Mongler while Mongler was in Missouri that the Amendment to

6

Articles of Organization was necessary for the anticipated closing between RGM and Kirkpatrick that would result in Kirkpatrick's ownership of RGM.

24. On December 28, 2011, Mongler executed the Amendment to Articles of Organization but the same was never recorded with the Secretary of State of the State of Missouri. Instead, it was delivered from Mongler to Loprieno for Loprieno to hold pending the closing of the sale of RGM's property.

25. On February 23, 2012, Loprieno and Knight recorded the SLS Deed and the LOP Deed even though they had paid nothing for the property and had transferred no common stock or other consideration to RGM for the deeds. Kirkpatrick and Consulting Direct did not know, and did not authorize, Loprieno and Knight to record the SLS Deed and the LOP Deed, as acknowledged by Kirkpatrick in an affidavit filed in Georgia litigation, Exhibit G.

26. On March 19, 2012, Loprieno and Knight recorded the Capgain Deed in the public records of Ware County, Georgia, even though they had not paid RGM for the deed. Kirkpatrick and Consulting Direct did not know, and did not authorize, Loprieno and Knight to record the Capgain Deed.

27. On March 19, 2012, Knight and Loprieno also recorded in the public records of Ware County, Georgia, deeds from SLS and LOP to Capgain Holdings, Inc., then named Capgain Properties, Inc., for RGM's property, Exhibits H and I. By this mechanism, Loprieno and Knight purportedly vested over $3,000,000.00 in real property free and clear of all liens in their corporation, Capgain Holdings, Inc., then named Capgain Properties, Inc., for the purpose of falsely representing to other shareholders and stock exchanges that Capgain Holdings, Inc. formerly named Capgain Properties, Inc., owned RGM's Property free of all liens.

28. All of the deeds signed by Kirkpatrick were fraudulently obtained by Loprieno and Knight through false representations to Defendant Ty Kirkpatrick, owner of Defendant Consulting Direct, who executed the deeds on behalf of RMG even though he had failed to pay the amount due or transfer the agreed consideration, that the sellers would receive publicly tradeable stock on a Canadian stock exchange in a minimum per share fixed price that would equal the value of the deeded properties.

29. Loprieno or Knight thereafter forged Kirkpatrick's name to an escrow agreement, the TSX Venture Exchange Escrow Agreement, to cause whatever shares of stock that were being purportedly issued to Consulting Direct in consideration for RGM's property to be held in escrow. By this scheme, Loprieno and Knight, through Capgain Holdings formerly named Capgain Properties gained record title to RGM's Property without ever transferring tradeable securities to any party, including RGM or Consulting Direct. The shares in escrow were purportedly issued to Consulting Direct and not to RGM, and no Defendant ever paid or transferred any consideration to either RGM or Mongler for RGM's Property or Mongler's membership interest in RGM.

30. No shares were ever issued to RGM as stated in the LOP Deed, the SLS Deed, or the Capgain Deed.

31. In April of 2013, while Consulting Direct's shares remained in escrow, Loprieno and Knight granted a Deed to Secure Debt on RGM's Property to Statesman Financing Corporation, a Canadian Lender, and obtained approximately $1,750,000.00 in loan proceeds, Exhibit J. When Loprieno and Knight granted this Deed to Secure Debt, it effectively deprived Kirkpatrick and Consulting Direct from returning RGM's Property to RGM and returning Mongler's LLC membership interest to Mongler.

32.     Statesman Financing Corporation sued RGM, Consulting Direct, Capgain Properties, Inc., and other Defendants in Civil Action No. 14V-0557, Superior Court of Ware County, Florida, and obtained a Final Order granting it summary judgment, Exhibit K, ("Final Order") quieting title and finding that RGM held no interest in RGM's Property by virtue of the foregoing deeds signed by Kirkpatrick and the Deed to Secure Debt granted by Loprieno and Knight to Statesman.

33.     From August 2013 through March 2014, Knight, as President of Capgain Properties f/k/a Capgain Holdings, Loprieno, and Kirkpatrick made the following false representations and took the following overt acts:

    a. By Letter dated August 28, 2013, Knight claimed to Mongler's attorney that Consulting Direct was never in title of the RGM Property and could not grant a valid Deed to Secure Debt that Kirkpatrick executed on behalf of Consulting Direct, Exhibit L. ("Consulting Direct Deed to Secure Debt").  When Kirkpatrick executed the Consulting Direct Deed to Secure Debt in January 2012, Kirkpatrick had actual knowledge that Kirkpatrick had previously deeded the RGM Property from RGM to SLS, LOP, and Capgain Holdings, formerly Capgain Properties and Kirkpatrick, Loprieno, and Knight all knew that Consulting Direct did not own RGM's Property and the Consulting Direct Deed to Secure Debt would be of no force or effect;

    b. By Letter dated March 25, 2014, Knight, who obtained the Amendment to Articles of Organization from Loprieno after Loprieno fraudulently obtained the Amendment to Articles of Organization from Mongler, Knight claimed that the Amendment to Articles of Organization established that Kirkpatrick

9

        had the authority to sign deeds deeding the RGM Property even though both Loprieno and Knight knew that Loprieno had obtained said document through false representations to Mongler and knew that Kirkpatrick had not paid for the LLC membership interest in RGM and that Kirkpatrick had no authority to execute the SLS Deed, the LOP Deed, and the Capgain Deed.

    c.  Knight falsely claimed that "CapGain paid valid consideration in for the RGM Property in the form of cash and stock," without disclosing that the stock referred to was purportedly transferred to Consulting Direct by Loprieno and Knight and not to RGM, as set forth on the fraudulent deeds recorded by Knight, Loprieno, and Capgain Holdings, Inc., formerly named Capgain Properties, Inc.; and

    d.  Knight and Loprieno dissipated all of the Statesman loan proceeds and rendered both Capgain Holdings formerly named Capgain Properties and Capgain Properties formerly named Big Mojo insolvent, thereby preventing Kirkpatrick and Consulting Direct from ever obtaining payment for the fraudulent transfer of the RGM Property to SLS, LOP, and Capgain, which in turn prevented Kirkpatrick and Consulting Direct from paying Mongler for Mongler's LLC interest in RGM.

34.    While the Final Order was on appeal, Statesman Financing Corporation and Mongler entered a confidential settlement to resolve claims and defenses in that litigation in an effort to mitigate damages and recover some value on the RGM Property stripped from RGM by the foregoing actions of Kirkpatrick, Loprieno, and Knight.

### Count One: Civil Conspiracy to Breach Fiduciary Duty

35. This is an action against all Defendants for a civil conspiracy to breach fiduciary duty.

36. Mongler realleges and incorporates herein Paragraphs 1 – 34.

37. When Kirkpatrick executed the LOP, SLS, and Capgain Deeds on December 8, 2011, he did so with the representation that Consulting Direct was the sole Member of RGM.

38. Although no closing had yet occurred between Kirkpatrick and Consulting Direct, as buyers, and Mongler as seller, of RGM's interest, by assuming to act as sole Member of RGM both Kirkpatrick and Consulting Direct assumed a fiduciary duty to Mongler.

39. Loprieno, Knight, Kirkpatrick and the Defendants all knew on December 8, 2011, that Mongler had not been paid or received contractual consideration for the transfer of the LLC membership interest of RGM, and knew that Kirkpatrick had no authority to execute the LOP, SLS, and Capgain Deeds.

40. Loprieno thereafter falsely represented to Mongler that the Amendment to Articles of Organization was necessary to prepare for a closing, when in fact Loprieno and Knight wanted possession of the Amendment of Articles of Organization to fraudulently document Kirkpatrick's authority to execute the SLS Deed, the LOP Deed, and the Capgain Deed.  By obtaining the Amendment of Articles of Organization, Loprieno assumed a fiduciary duty to Mongler to hold that document pending Mongler's consent to release the document after Mongler was paid for Mongler's LLC membership interest in RGM.

41. The execution of the SLS Deed, the LOP Deed, and the Capgain Deed and the recordation of the same without payment of consideration to RGM was a breach of fiduciary duty owed to Mongler and RGM by Kirkpatrick and Consulting Direct, and the disbursement of

the Amendment to Articles of Organization was a breach of fiduciary duty owed by Loprieno to Mongler.

42. As a result of the foregoing, two or more persons with the object of accomplishing the divestiture of RGM's Property from RGM for no payment or consideration, Kirkpatrick, Loprieno, Knight and the Defendants agreed and formed a meeting of the minds to cause Kirkpatrick to execute the SLS Deed, the LOP Deed, and Capgain Deed knowing Kirkpatrick had no authority to execute said deeds, and to obtain a signed Amendment to Articles of Organization purporting to give Kirkpatrick authority to execute said deeds, and each of them took the foregoing acts in furtherance of the conspiracy.

43. As a proximate cause of the foregoing, Mongler was deprived of value in excess of $3,000,000 through the divesture of RGM's Property for no consideration, the execution of the Deed to Secure Debt in favor of Statesman Financing Corporation, the loss of the loan proceeds obtained from Statesman Financing Corporation without paying RGM or Mongler the value of RGM's Property pledged to secure the loan, and the ultimate loss of the title and value of said property.

44. The foregoing constitutes a civil conspiracy to breach fiduciary duty, and as a proximate cause thereof, Mongler sustained damages.

**Count Two: Civil Conspiracy - Constructive Fraud**

45. This is an action against all Defendants for civil conspiracy to commit constructive fraud.

46. The Plaintiff realleges and incorporates herein Paragraphs 1-34, 37-40, and 42-43.

47. The foregoing constitutes a conspiracy to commit constructive fraud by all Defendants, and as a proximate cause thereof, the Plaintiff has sustained damages.

**Count Three:  Civil Conspiracy to Commit Fraud**

48. This is an action for civil conspiracy to commit fraud.

49. The Plaintiff realleges Paragraphs 1-34, 37-40, and 42-43.

50. At the time Loprieno and Knight induced Kirkpatrick to execute the SLS Deed, the LOP Deed, and the Capgain Deed, stating that RGM would receive tradeable common stock as set forth on the Capgain Deed, all Defendants knew that they intended to issue any stock to Consulting Direct and not to RGM and therefore knew that the representations on the deeds were false.

51. All Defendants knew and intended to divest RGM of the RGM Property for no consideration or payment of any funds to RGM.

52. The representation in the Capgain Deed that RGM would be issued stock in consideration for the Deed was a representation to RGM that was false at the time, that was known by Kirkpatrick, Loprieno, and Knight to be false when made, the representation was made to defraud RGM out of the deed to the RGM Property for no consideration.

53. Whatever stock, if any, was issued to Consulting Direct and not to RGM as required by the Deed.

54. As a result of the foregoing,  two or more persons with the object of accomplishing the divestiture of RGM's Property from RGM for no payment or consideration to RGM, Kirkpatrick, Loprieno, Knight and the Defendants agreed and formed a meeting of the minds to execute the SLS, LOP, and Capgain Deeds knowing that RGM would receive no consideration for the deeds, and knowing that Kirkpatrick had no authority to execute the deeds and would be unable to pay Plaintiff Mongler for Plaintiff Mongler's LLC membership interest in RGM, and each of them took the foregoing acts in furtherance of the conspiracy.

55. The foregoing constitutes a civil conspiracy to commit fraud, and as a proximate cause of the foregoing, Plaintiff Mongler has suffered damages.

**Count Four: Fraud as to Defendant Loprieno**

56. This is an action for fraud as to the Defendant Loprieno.

57. Plaintiff realleges and incorporates herein Paragraphs 1-34.

58. Loprieno made the following false representations to the Plaintiff Mongler:

   a. That Loprieno was attorney for Kirkpatrick;

   b. That the contract for the purchase and sale of Mongler's LLC interest would fully protect Mongler and ensure that Mongler was paid the agreed consideration for Mongler's LLC interest;

   c. That the Amendment to the Operating Agreement identifying Consulting Direct as the sole member of RGM would be held by Loprieno pending closing and would only be used if a closing occurred; and'

   d. From 2012 through 2016, Loprieno regularly represented to Mongler that the Capgain securities offering was completed, that the shares would be released from escrow, that Kirkpatrick would control millions of dollars in tradeable securities to pay Mongler for Mongler's LLC interest, and that Mongler could be assured that Kirkpatrick and Consulting Direct would pay Mongler.

59. Loprieno made the foregoing false representations so Capgain Holdings, Inc., formerly named Capgain Properties, Inc., could obtain a deed to the RGM Property without payment of any consideration, to delay Mongler in attempting to vacate through litigation the Capgain Deed, the SLS Deed, and the LOP Deed, until Capgain was able to encumber the RGM

Property with the loan and Deed to Secure Debt in favor of Statesman Financing Corporation, and to further delay Mongler in taking legal action to protect Mongler's interests.

60. Loprieno knew that the foregoing representations were false when made, Loprieno made the false representations to Mongler with the intent that Mongler rely on the same, Mongler did rely on Loprieno's false representations, and as a result of the foregoing, Mongler sustained damage through the loss of the value of Mongler's LLC membership interest in RGM.

61. The foregoing constitutes actual fraud by Loprieno, and as a proximate cause thereof, Mongler has suffered the foregoing damages.

## REQUEST FOR RELIEF

**WHEREFORE;** the Plaintiff requests damages, the costs of this action, and such other relief as the Court deems appropriate.

**CLAIM FOR PUNITIVE DAMAGES AS SPECIAL DAMAGES:** The foregoing actions of the Defendants are intentional, outrageous, and were taken with evil motive and reckless indifference to Plaintiff's rights, and Plaintiff claims and demands punitive damages for such punitive damages as are fair and reasonable.

**REQUEST FOR TRIAL BY JURY: PLAINTIFF REQUESTS TRIAL BY JURY.**

Dated:  January 31, 2017.

                    <u>Donald J. Schutz</u>
                    Donald J. Schutz, Esq.
                    Fla Bar No. 382701
                    535 Central Avenue
                    St. Petersburg, FL 33701
                    727-823-3222
                    727-895-3222 Telefax
                    donschutz@netscape.net
                    Attorney for Plaintiff
                    Trial Counsel

Donald J. Schutz Is Not A Member of the Bar of this Court, and Has Simultaneously Filed a Separate Motion to Appear Pro Hac Vice