UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| ROBERT MONGLER, | ) |   |
|---|---|---|
|     Plaintiff, | ) |   |
| vs. | ) | Case No. 2:17 CV 6 CDP |
| BRIAN KNIGHT, et al., | ) |   |
|     Defendants. | ) |   |

## **MEMORANDUM AND ORDER**

Plaintiff Robert Mongler was the sole member of RGM Properties, LLC, which owned real property in Georgia. Mongler claims defendants Brian Knight, Michael Loprieno, Ty Kirkpatrick, Consulting Direct, Inc., CapGain Holdings, Inc., CapGain Properties, Inc., Strategic Lending Solutions, LLC, and LOP Capital, LLC fraudulently divested him of his membership interest in RGM. According to the complaint, defendants then transferred the real property held by RGM to their defendant companies, leaving Mongler with nothing. Mongler asserts claims of civil conspiracy and fraud against defendants.

This action is before me now on certain defendants' motion to dismiss plaintiff's complaint, as well as their motion to disqualify plaintiff's counsel, and Mongler's motions to strike. I held oral argument on the motions, and both parties have attached documents and other evidence to their briefs. The moving

defendants[1] argue the complaint should be dismissed for lack of personal jurisdiction and lack of standing.  The essence of Mongler's complaint is that defendants intentionally targeted him, in Missouri, to fraudulently obtain Georgia property that he owned through RGM Properties, LLC.  I conclude that this court has personal jurisdiction over defendant Loprieno and his associated companies, but not over defendant Knight and Strategic Lending Solutions, LLC.  Mongler has made a sufficient showing of tortious conduct by Loprieno, acting as agent for LOP Capital, LLC and CapGain Properties, to satisfy Missouri's long arm statute and due process, but Knight's contacts with Missouri are so limited that due process would be offended by allowing suit to proceed against him here.  I also conclude that Mongler has Article III standing as he has demonstrated the elements of a case and controversy.

## Background

This dispute has a long and complicated history.  In 2011, Mongler was the sole member of RGM Properties, LLC.  RGM owned real property in Georgia valued at over $3,000,000.  While Mongler is a Missouri citizen and RGM is a

---

[1] The moving defendants are Brian Knight, Michael Loprieno, CapGain Properties, Inc., Strategic Lending Solutions, LLC, and LOP Capital, LLC.  Defendants Ty Kirkpatrick, Consulting Direct, Inc., and CapGain Holdings, Inc. are in default and are not parties to the motion.

Missouri LLC, none of the defendants are citizens or residents of Missouri.[2] Mongler names three individuals and their related companies as defendants in his lawsuit. Defendant Ty Kirkpatrick owns Consulting Direct, Inc., and both are in default, as is defendant CapGain Holdings, Inc. Knight and his company Strategic Lending Solutions, LLC ("SLS"), are based primarily in Illinois. Loprieno and his company, LOP Capital, LLC, are also based in Illinois. Defendant CapGain Properties, Inc., a Canadian company, was incorporated by Knight and Loprieno. Additionally, Loprieno is the attorney representing himself and all the other non-defaulting defendants.

In his complaint, Mongler sets forth the following allegations: Mongler's LLC, RGM, owned property in Georgia that it wanted to sell or trade. During 2011, Kirkpatrick and Consulting Direct began negotiations with Mongler for the purchase of Mongler's membership interest in RGM. Knight and Loprieno drafted and induced Mongler to sign a "Purchase and Sale Agreement." Mongler received no compensation for his interest in RGM.

Shortly after Mongler signed the Purchase and Sale Agreement, Loprieno and Knight induced Kirkpatrick to sign deeds on behalf of RGM granting one-third interests in the property to CapGain Properties, LOP, and SLS. Defendants knew

---

[2] Defendants have not filed the disclosure of organizational interests required by Local Rule 3-2.09, and I will order those remaining in the case after this order to do so forthwith.

that no consideration had been paid to RGM or Mongler for the property. To document Kirkpatrick's authority to execute these deeds and transfer the property from RGM, Loprieno drafted and falsely induced Mongler to sign an Amendment to RGM's Articles of Organization.

LOP and SLS subsequently deeded their one-third interests in the property to CapGain Properties. CapGain Properties recorded the deeds in March 2012. By this mechanism, Loprieno and Knight vested over $3,000,000 in real property – free and clear of all liens – in CapGain. CapGain then mortgaged the property to Statesman Financing Corporation for $1,750,000. Loprieno and Knight dissipated the Statesman loan proceeds and rendered CapGain Properties insolvent.

The complaint includes counts against all defendants for various Missouri common-law intentional torts related to fraud and conspiracy. In addition to this case, the parties and related entities have filed a number of other suits. In their motion papers and at the hearing, counsel for Mongler and Loprieno attempted to explain those suits, but their explanations were confusing and contradictory. Based on what I understand from those explanations and the documents provided, it appears that there are suits currently pending in Florida state and federal courts. Mongler had at one time been party to one or both of those suits, and they are brought by the same attorney he has here (Donald Shultz) against the same defendants. Mongler is no longer a party to those suits, but the remaining plaintiff

is a different client of Shultz's who alleges the same defendants engaged in a similar scheme to deprive him of real estate in Florida. Statesman Financing, the lender who ended up with the Georgia property after CapGain Properties defaulted, filed a quiet title action in Georgia state courts. Although that case resulted in a judgment adverse to Mongler, he and Statesman (who is not a party here) ultimately settled the case and Mongler now has title to the Georgia property, although apparently he will owe money to Statesman when he sells the property. Additionally, CapGain Properties' stock has been suspended from trading by the Canadian stock exchange.

In addition to the motion to dismiss for lack of standing and lack of personal jurisdiction, both lawyers have filed motions challenging the other's right to appear in this court and to represent the parties they claim to represent, and Mongler has filed motions to strike certain of the defendants' papers. The lawyers accuse one another of unethical practices, fraud and/or conflicts of interest.

**Personal Jurisdiction**

To survive a motion to dismiss for lack of personal jurisdiction brought under Fed. R. Civ. P. 12(b)(2), a plaintiff must make a prima facie showing of personal jurisdiction by pleading sufficient facts to support a "reasonable inference that the defendants can be subjected to jurisdiction within the state." *K-V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 591-92 (8th Cir. 2011). "Although the

evidentiary showing required at the prima facie stage is minimal, the showing must be tested, not by the pleadings alone, but by the affidavits and exhibits supporting or opposing the motion." *Id.* at 592 (internal citation and quotation marks omitted). I must view the evidence in a light most favorable to the plaintiff and resolve factual conflicts in the plaintiff's favor; however, plaintiff carries the burden of proof and that burden does not shift to defendants. *Epps v. Stewart Info. Servs. Corp.*, 327 F.3d 642, 647 (8th Cir. 2003).

In order to subject a defendant to a court's personal jurisdiction, due process requires that the defendant have certain minimum contacts with the state, such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945). There are two types of personal jurisdiction: general and specific. *Daimler AG v. Bauman*, 134 S.Ct. 746, 754 (2014). General, or "all-purpose," jurisdiction exists over a defendant where that defendant resides; for a corporation or other entity general jurisdiction exists when the forum state is its place of incorporation or the location of its principal place of business. *Id.* at 760; *see also Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011). However, in an "exceptional case," an additional state could have general jurisdiction if the corporation's activities in that state are "so substantial and of such a nature as to render the corporation at home in that State." *Daimler*, 134 S.Ct. at 761 n.19. Mongler does

not assert that any defendants are subject to general jurisdiction in Missouri; none of the defendants are "at home" here.

Specific, or "conduct-linked," jurisdiction involves suits "arising out of or related to the defendant's contacts with the forum." *Daimler*, 134 S.Ct. at 751; *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984). For a Missouri court to exercise specific jurisdiction over an out-of-state defendant, two requirements must be met: 1) jurisdiction must be allowed by the Missouri long-arm statute; and 2) the reach of the long-arm statute must comport with due process. *Viasystems, Inc. v. EBM-Papst St. George Gmbh & Co.*, 646 F.3d 589, 593-94 (8th Cir. 2011). Missouri's long-arm statute authorizes, *inter alia*, personal jurisdiction over defendants who, either in person or through an agent, transact business or commit a tort within the state. Mo. Rev. Stat. § 506.500.1(1), (3).

"For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State." *Walden v. Fiore*, 134 S.Ct. 1115, 1121 (2014). In other words, "the relationship must arise out of contacts that the 'defendant himself' creates with the forum State." *Id.* at 1122 (quoting *Burger King v. Rudzewicz*, 471 U.S. 462, 475 (1985)). "In adopting the long-arm statute, the Missouri legislature 'intended to provide for jurisdiction, within the specific categories enumerated in the statutes

7

[e.g., transacting business or making a contract within the state,] to the full extent permitted by the due process clause.'" *K-V Pharm.*, 648 F.3d at 592 (brackets in original) (quoting *State ex rel. Metal Serv. Ctr. of Ga., Inc. v. Gaertner*, 677 S.W.2d 325, 327 (Mo. 1984) (en banc)). In all instances, the long-arm statute requires that the cause of action arise from the doing of the enumerated act. Mo. Rev. Stat. § 506.500.3 ("Only causes of action arising from acts enumerated in this section may be asserted against a defendant in an action in which jurisdiction over him is based upon this section.").

Further, "[e]ven if personal jurisdiction over a defendant is authorized by the forum state's long-arm statute, jurisdiction can be asserted only if it comports with the strictures of the Due Process Clause." *Viasystems*, 646 F.3d at 594. "The touchstone of the due-process analysis remains whether the defendant has sufficient minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id.* (brackets in original and internal quotation marks omitted). "The fundamental inquiry is whether the defendant has purposefully availed itself of the benefits and protections of the forum state to such a degree that it should reasonably anticipate being haled into court there [.]" *Id.* (internal citation and quotation marks omitted).

Defendants first contend personal jurisdiction is not authorized under Missouri's long-arm statute because defendants did not transact business within

8

Missouri. Defendant's argument, however, is irrelevant as Mongler relies instead on the claim that defendants committed a tort in Missouri. Mongler asserts defendants' scheme to fraudulently divest him of real property falls under the tortious acts section of Missouri's long-arm statute because defendants' tortious conduct was targeted at him in Missouri and produced consequences in Missouri.

As noted above, Missouri's long-arm statute authorizes personal jurisdiction over any person or corporation, who either in person or through an agent, commits "a tortious act within this state." Mo. Rev. Stat. § 506.500.1(3). The commission of a tortious act prong of the long-arm statute has been broadly construed. *See Bryant v. Smith Interior Design Group*, 310 S.W.3d 227, 232 (Mo. 2010) (en banc). Missouri courts have interpreted it to include "[e]xtraterritorial acts that produce consequences in the state, such as fraud...." *Id.* (internal quotation marks omitted); *State ex rel. William Ranni Assocs., Inc. v. Hartenbach*, 742 S.W.2d 134, 139 (Mo. 1987) (en banc). The Eighth Circuit applies a foreseeability standard when evaluating whether jurisdiction is appropriate over a tortious act occurring in another state with actionable consequences in Missouri. *Myers v. Casino Queen, Inc.,* 689 F. 3d 904, 911 (8th Cir. 2012). Under this standard, if a defendant can reasonably foresee his or her actions having consequences felt in Missouri, jurisdiction is authorized. *Id.*

Mongler is correct that the tortious acts alleged here fall within the reach of Missouri's long-arm statute. The complaint alleges that each defendant took steps in furtherance of the plan to defraud Mongler. Loprieno and Knight acted as agents on behalf of their related companies. Based on the allegations of the complaint, although defendants' tortious acts were committed outside Missouri and concerned property in Georgia, the consequences and injury were felt by Mongler in Missouri. Moreover, based on Mongler's allegations and under the applicable foreseeability standard, defendants could have reasonably foreseen that divesting a Missouri resident of more than $3,000,000 in property would produce consequences in Missouri.

This does not end the inquiry, however, because even if the long-arm statute is satisfied, plaintiff must also show that defendants have sufficient minimum contacts with Missouri such that the exercise of jurisdiction comports with due process principles. In the Eighth Circuit, a five-factor test is applied to determine whether sufficient contacts exist to support the exercise of personal jurisdiction under the Due Process clause. *Dever v. Henzen Coatings, Inc.*, 380 F.3d 1070, 1073-74 (8th Cir. 2004); *Dakota Indus., Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1390 (8th Cir. 1991). The five factors are: (1) the nature and quality of the contacts with the forum state; (2) the quantity of the contacts; (3) the relationship of the cause of action to the contacts; (4) the interest of the forum state in

providing a forum for its residents; and (5) the convenience or inconvenience to the parties. *Dever*, 380 F.3d at 1073-74 (quoting *Burlington Indus., Inc. v. Maples Indus., Inc.*, 97 F.3d 1100, 1102 (8th Cir. 1996)).

In addition, when the cause of action involves a tortious act, the court should consider the "effects test" of *Calder v. Jones*, 465 U.S. 783, 789-90 (1984). Under the *Calder* effects test,

> a defendant's tortious acts can serve as a source of personal jurisdiction only where the plaintiff makes a prima facie showing that the defendant's acts (1) were intentional, (2) were uniquely or expressly aimed at the forum state, and (3) caused harm, the brunt of which was suffered—and which the defendant knew was likely to be suffered—[in the forum state].

*Johnson v. Arden*, 614 F.3d 785, 796 (8th Cir. 2010). The *Calder* effects test does not replace the Eighth Circuit's five-factor test for personal jurisdiction, but "requires the consideration of additional factors when an intentional tort is alleged." *Dakota Indus., Inc.*, 946 F.2d at 1391.

As the cause of action here is based upon the commission of tortious acts, I will first consider whether defendants' conduct satisfies the *Calder* effects test. According to the complaint, Loprieno, Knight, and their related companies intentionally and fraudulently divested Mongler and RGM of real property worth more than $3,000,000. Specifically, in the first step of the scheme, which Mongler alleges began in 2011 and continued into 2013, Loprieno made false

11

representations to persuade Mongler to transfer his interest and decision-making authority in RGM to Kirkpatrick by signing documents drafted by Loprieno – the Purchase and Sale Agreement and the Amendment to Articles of Organization.

Mongler's affidavit offers evidence of numerous text messages and emails sent by Loprieno to Mongler in Missouri to induce the transfer. These acts are sufficient to show that Loprieno, and through him, LOP and CapGain Properties, for whom he acted as an agent, directed fraudulent acts to Mongler in Missouri, with the intention that Mongler rely on Loprieno's various inducements and sign over his interest in the Georgia property. Moreover, Mongler claims of Loprieno's inducements happened in Missouri, because that is where Mongler suffered the loss he alleges. Although Loprieno argues that it was really Kirkpatrick who was taking actions in Missouri, the evidence submitted by Mongler shows that Loprieno himself was directly involved in the fraud targeting Mongler and personally made numerous representations to Mongler in Missouri that Mongler claims were false. Loprieno argued at the hearing that he may not have been acting as Kirkpatrick's lawyer but instead was just acting as a "friend" who helped Kirkpatrick out from time to time. This distinction – even if true – makes no difference for purposes of personal jurisdiction. The numerous emails and text messages attached to Mongler's affidavit show that Loprieno drafted legal documents and transmitted them to Mongler, repeatedly urged Mongler to execute

the legal documents, made continuing representations about what Kirkpatrick and others were doing, and repeatedly reassured Mongler that he would eventually obtain value for the property he had signed over. These contacts are more than sufficient to hold Loprieno and his companies subject to legal action in Missouri.

Application of the Eighth Circuit's five-factor test further supports the exercise of specific jurisdiction over Lopriano, LOP Capital LLC and CapGain Properties, Inc. The first factor and third factors – the nature and quality of defendants' contacts with Missouri and the relationship of those contacts to the claim – weigh in favor of jurisdiction. Defendants' alleged tortious conduct was aimed at Mongler in Missouri and was not attenuated, random or fortuitous. *See Dakota Indus.,* 946 F.2d at 1389 ("The contacts with the forum state must be more than random, fortuitous, or attenuated.") (internal citation and quotations omitted). *See also Viasystems, Inc.*, 646 F.3d at 594. The false representations and communications made to Mongler were integral to the tortious scheme to defraud him: they persuaded Mongler to transfer his interest in RGM and allowed Lopriano and his companies to record deeds to the Property and mortgage it. The second factor – the quantity of contacts with the forum – also shows that jurisdiction is appropriate. Loprieno sent several documents and exchanged many text messages and emails with Mongler in Missouri. From the exhibits attached to Mongler's affidavit, it appears that at times Loprieno and Mongler were in near-

13

daily contact, with multiple contacts on some days. Missouri has an interest in providing a forum for its citizen Mongler, who felt the consequences of the harm in Missouri. The final factor – the convenience or inconvenience to the parties – is a draw as Mongler and Lopriano are residents of different states and each party's home state would be more convenient to him.

Overall, application of the five relevant factors set forth above, in combination with the *Calder* effects test, leads me to conclude due process does not preclude this Court from exercising specific personal jurisdiction over Lopriano, LOP Capital LLC and CapGain Properties, Inc.

Mongler's arguments and evidence regarding Knight and his company, Strategic Lending Solutions, LLC, however, are weaker. Mongler alleges that all the defendants took additional steps to knowingly divest RGM of the Georgia property by fraudulently recording deeds and pledging the property to secure a loan. Those actions, however, did not take place in Missouri. Although Mongler alleges that Knight was equally in on the fraud, he points to only two contacts that Knight had with him in Missouri. In early 2014 Mongler received a telephone call from Knight, and in March of 2014 Knight wrote a letter responding to a letter from Mongler's counsel. At oral argument, counsel for Mongler admitted that the telephone call was also in response to a contact Knight had received from Mongler's lawyer. These limited contacts, both made in response to Mongler's

14

demands for relief after he had already lost his property, are not sufficient contacts to subject Knight to jurisdiction in Missouri.

Mongler's counsel argued at the hearing that the Court should apply the "conspiracy theory of personal jurisdiction" to hold Knight responsible in Missouri. Although he cites one case from another jurisdiction that indicated Missouri's long-arm statute might justify this theory, *In re Vitamins Antitrust Litigation,* Misc. No. 99-197(TFH), 2001 U.S. Dist. LEXIS 25073 (D. D.C. Oct. 30, 2001), he cites no Missouri cases so holding, and I have found none. Two cases conclude that the Missouri courts would *not* recognize this theory. An unpublished opinion from the Circuit Court of St. Louis, Missouri concluded that "this conspiracy theory of personal jurisdiction" was not consistent with due process. *City of St. Louis v. Am. Tobacco Co.,* No. 982-09652, 2003 WL 23277277, at *7 (MO. Cir. Dec. 16, 2003); *accord In re Reciprocal of Am. Sales Practices Litig.,* Civ. A. 04-2294, 2005 WL 3593635 at *3 (W.D. Tenn. Dec. 30, 2005). I agree with the St. Louis circuit court's conclusion that both due process and the Missouri long-arm statute require something more than a boilerplate allegation of conspiracy. Under the facts alleged here, Knight and his company, SLS, do not have sufficient contacts with Missouri to justify suit to proceed against them, so I will grant their motion to dismiss for lack of personal jurisdiction.

## Article III Standing

Defendants also argue Mongler's case should be dismissed for lack of standing. They argue that only RGM Properties LLC would have standing to sue because it was the entity that held title to the Georgia land. Dismissal under Rule 12(b)(1) of the Federal Rules of Civil Procedure is appropriate if the party asserting jurisdiction has failed to satisfy a threshold jurisdictional requirement. *See Herden v. United States*, 726 F.3d 1042, 1046 (8th Cir. 2013). The court has no subject matter jurisdiction over a case in which the litigant lacks Article III standing. *Iowa League of Cities v. E.P.A.*, 711 F.3d 844, 869 (8th Cir. 2013). "Article III of the United [States] Constitution confines the federal courts to adjudicating actual cases and controversies." *Potthoff v. Morin,* 245 F.3d 710, 715 (8th Cir. 2001) (internal quotations and citation omitted). "To establish Article III standing, a plaintiff must show (1) an injury in fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision." *Susan B Anthony List v. Driehaus,* 134 S. Ct. 2334, 2341 (2014) (internal quotation marks and brackets omitted).

"An injury-in-fact is a harm that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Steger v. Franco, Inc.*, 228 F.3d 889, 892 (8th Cir. 2000) (internal quotations omitted). Here, Mongler demonstrates an

injury-in-fact as he claims he was divested of his membership interest in RGM – which at the time owned real estate valued at over $3,000,000. Before the alleged fraud Mongler was the sole member and owner of RGM, which owned the Georgia property. After the fraud Mongler had nothing. This shows an injury-in-fact. Moreover, Mongler has also adequately alleged causation as his injury is fairly traceable to defendants' conduct. Specifically, Mongler asserts defendants fraudulently induced Mongler to convey his membership interest in RGM, did not compensate him, fraudulently recorded deeds to the property in favor of CapGain, mortgaged the property, and dissipated the proceeds of the loan. Finally, Mongler's injury would likely be redressed if he were to obtain a decision in his favor in this case. Accordingly, I find Mongler has properly alleged Article III standing and I will deny defendants' motion to dismiss for lack of standing.

### Motions to Disqualify and to Strike

As stated above, the parties have filed a number of documents challenging each attorney's right to be involved in this case. Both Loprieno and Mongler's attorney, Donald Shultz, are appearing *pro hac vice*, as neither is a Missouri lawyer or regularly admitted to practice before this federal court. Mongler objected to Loprieno's being granted *pro hac vice* status based on his factual involvement in this case and on disciplinary proceedings that are pending against him in Illinois. When Loprieno indicated that none of the other defendants would be able to afford

counsel were he not their lawyer, Mongler withdrew this objection. Defendants filed a motion to disqualify Shultz, alleging that Shultz has a conflict of interest in representing both Mongler and his other client in the Florida case. Various motions to strike the briefs are pending, with each lawyer accusing the other of unethical practices.

I will deny all these motions. Although I am concerned about the allegations and find the lawyers' accusations against one another to be extremely distasteful, neither side has shown any proof – as opposed to vitriolic accusation – that either should not be allowed to continue. It is in the interests of justice that all parties be represented by counsel, and so I will allow both to continue in this case. If it reaches trial, it may be necessary for LOP and CapGain to obtain separate counsel, as it is likely that Lopriano will be a witness.

**IT IS HEREBY ORDERED** that defendants' motion to dismiss [17] is granted in part and denied in part; this case is dismissed without prejudice as to defendants Brian Knight and Strategic Lending Solutions, LLC., but it will proceed against the non-defaulting defendants Michael Lopriano, CapGain Properties, Inc. and LOP Capital, LLC.

**IT IS FURTHER ORDERED** that all other pending motions [22, 32, 33] are denied.

**IT IS FURTHER ORDERED** that defendants CapGain Properties, Inc. and

LOP Capital, LLC must file Disclosures of Organizational Interests as required by Local Rule 3-2.09 within seven days of the date of this order.

    A Case Management Order is entered separately this same date.

                                                  _____
                                                  CATHERINE D. PERRY
                                                  UNITED STATES DISTRICT JUDGE

Dated this 10th day of July, 2017.